1

2

3

4          **UNITED STATES DISTRICT COURT**

5          **NORTHERN DISTRICT OF CALIFORNIA**

6          **SAN JOSE DIVISION**

7

8    UNITED STATES OF AMERICA,              Case No.  16-cr-00150-BLF-3

9              Plaintiff,                   **ORDER DENYING DEFENDANT**
                                            **MENDOZA'S MOTION FOR A NEW**
10         v.                               **TRIAL**

11   ARACELI MENDOZA,                       [Re:  ECF 563]

12             Defendant.

13

14

15         On October 6, 2021, a jury convicted Defendant Araceli Mendoza of one count of

16   conspiracy to commit sex trafficking of children in violation of 18 U.S.C. § 371, and one count of

17   sex trafficking of children in violation of 18 U.S.C. § 1591.  Mendoza moves for a new trial under

18   Federal Rule of Criminal Procedure 33, asserting that the Court erred in refusing to give her

19   proposed jury instruction on the defense of duress and erred in making certain evidentiary rulings.

20   The motion is opposed by the Government.

21         The motion is DENIED for the reasons discussed below.

22   **I.     BACKGROUND**

23         *Charges*

24         Mendoza and her co-defendants, Ariel Guizar-Cuellar, Jocelyn Contreras, and Alyssa

25   Anthony, were charged by Indictment with conspiracy to commit sex trafficking of children in

26   violation of 18 U.S.C. § 371 and sex trafficking of children in violation of 18 U.S.C. § 1591.  *See*

27   Indictment, ECF 1.  Guizar-Cuellar also was charged with sexual exploitation of children in

28   violation of 18 U.S.C. § 2251.  *See id*.  The Indictment alleged the following:  the four defendants

United States District Court
Northern District of California

United States District Court
Northern District of California

1    operated a prostitution venture in San Jose, California, from September 2014 through January

2    2016. *See id.* Guizar-Cuellar recruited teenage girls to work as prostitutes by befriending them

3    through social media, persuading them to travel to San Jose, and then arranging for them to

4    provide sexual services for money. *See id.* Mendoza, Contreras, and Anthony helped with

5    logistics by photographing the girls in their underwear, posting the photographs on

6    "backpage.com" to advertise sexual services, renting hotel and motel rooms for the girls' "dates,"

7    monitoring the "dates," and collecting money earned from the "dates." *See id.* The Indictment

8    charged this conduct with respect to three teenage victims:  B.M., J.B., and J.V.  *See id.*

9          Guizar-Cuellar, Contreras, and Anthony entered guilty pleas and are awaiting sentencing.

10   *See* Minute Entries, 145, 162, 250.  In their plea agreements, Mendoza's co-defendants affirmed

11   Mendoza's participation in the charged conspiracy and sex trafficking of B.M., J.B., and J.V.  *See*

12   Plea Agreements, ECF 144, 164, 251.  Mendoza nonetheless chose to proceed to trial.  By

13   Superseding Indictment, Mendoza was charged with conspiracy to commit sex trafficking of

14   B.M., J.B., and J.V. in violation of 18 U.S.C. § 371 (Count 1), sex trafficking of B.M. in violation

15   of 18 U.S.C. § 1591 (Count 2), sex trafficking of J.B. in violation of 18 U.S.C. § 1591 (Count 3),

16   and sex trafficking of J.V. in violation of 18 U.S.C. § 1591 (Count 4).  *See* Superseding

17   Indictment, ECF 359.

18         *Duress Defense*

19         Mendoza asserted a defense of duress, claiming that Guizar-Cuellar coerced her into

20   participating in the prostitution venture.  The Government moved in limine to exclude the duress

21   defense, arguing that Mendoza could not make a prima facie showing of each element of the

22   defense.  *See United States v. Ibarra-Pino*, 657 F.3d 1000, 1004 (9th Cir. 2011) (citations omitted)

23   ("A defendant is not entitled to present a duress defense at trial or receive a jury instruction on

24   duress unless the defendant makes a prima facie showing of duress in a pretrial offer of proof, or

25   in evidence presented at trial.").  While this Court opined that the Government's arguments were

26   "quite strong, and ultimately may persuade the jury," the Court denied the Government's motion

27   in limine and allowed Mendoza to present the duress defense at trial.  *See* Order re Motions *in*

28   *Limine* at 2, ECF 403.

United States District Court
Northern District of California

1    *Government's Trial Presentation*

2    Trial commenced with jury selection on September 10, 20221. *See* Minute Entry, ECF

3    525. The Government presented the testimony of victims J.V. and J.B., and of several law

4    enforcement agents.

5    Victim J.V. testified that she met Guizar-Cuellar on social media in June 2015, when she

6    was fifteen years old. Tr. Vol. 2 at 23, Def.'s Exh. E, ECF 563-7. Guizar-Cuellar picked her up at

7    her mother's home in Atwater, California, and drove her to San Jose, California. *Id*. at 24-25.

8    Guizar-Cuellar had sex with her at a Best Western motel and then put her to work as a prostitute.

9    *Id*. at 27-32. She had between five and ten prostitute dates at Best Western and Super 8 motels in

10   June 2015, earning about $500. *Id*. at 32-47. J.V. testified that Mendoza worked for Guizar-

11   Cuellar, and that Mendoza set up Backpage accounts to advertise sexual services, set up

12   prostitution dates, drove J.V. and other girls to motels for dates, and collected the money earned

13   on dates. *Id*. at 33-39. J.V. returned to San Jose in September 2015 and had seven prostitution

14   dates based on Backpage ads posted by Mendoza, earning approximately $1,000. *Id*. at 49, 60-62.

15   J.V. again returned to San Jose in December 2015, at which time Mendoza got her jobs at strip

16   clubs. *Id*. at 68-72. J.V. did 40-50 lap dances a day, earning about $5,000 in less than a week. *Id*.

17   at 239. J.V. never got to keep any of the money she earned. *Id*. at 147. J.V. testified that

18   Mendoza did get to keep money she earned, that Mendoza was allowed to go shopping and to the

19   nail salon when J.V. was not. *Id*. Mendoza gave J.V. cocaine, and Guizar-Cuellar gave her

20   methamphetamine. *Id*. at 47, 62, 71-72.

21   Victim J.B. testified that she met Guizar-Cuellar on social media when she was fifteen

22   years old, in March 2015. Tr. Vol. 2 at 151-53. Eventually she met Guizar-Cuellar at his tattoo

23   shop. *Id*. at 154. Mendoza was there as well. *Id*. That same night, Guizar-Cuellar put her to

24   work as a prostitute at the Super 8 hotel in San Jose, where she had about fifteen dates and made

25   approximately $1,000. *Id*. at 155-71. J.B. worked as a prostitute from March 2015 to August

26   2015. *Id*. at 208. Mendoza or Contreras would stay in the next room during J.B.'s dates. *Id*. at

27   176-77. J.B. had about thirty prostitution dates in all. *Id*. at 178. She was given cocaine and

28   methamphetamine by Guizar-Cuellar. *Id*.

3

1    Victim B.M. died shortly before the trial started and so was unable to testify.  However,

2    J.V. identified B.M. as a girl who was doing prostitution dates for Guizar-Cuellar when J.V. was

3    in San Jose in December 2015.  Tr. Vol. 2 at 70-74.  J.B. also identified B.M. as a prostitute who

4    worked for Guizar-Cuellar in 2015.  *Id*. at 208-11.  In addition, after the jury was shown a child

5    pornography video of B.M. having sex with a client in a hotel room, J.B. identified female voices

6    that can be heard in the background laughing and mocking B.M. as the voices of Mendoza and

7    Anthony.  Tr. Vol. 3 at 56-61, Def.'s Exh. P, ECF 563-8.

8    The Government's other witnesses were law enforcement officers who investigated the

9    defendants' prostitution venture.  Through those witnesses, the Government introduced hotel

10   records, Backpage ads, photographs, videos, Instagram postings, and recorded statements,

11   showing when and how the prostitution venture operated.

12   *Mendoza's Trial Presentation*

13   The defense relied primarily on the testimony of Mendoza herself and the testimony of

14   expert witnesses to establish her defense of duress.

15   Mendoza testified at length, describing her history of childhood sexual abuse, her first

16   interactions with Guizar-Cuellar on social media, and her hope that Guizar-Cuellar would help her

17   with a modeling career.  Tr. Vol. 5 at 47-50, 85-93, Def.'s Exh. B, ECF 563-4.  Mendoza became

18   sexually involved with Guizar-Cuellar, and shortly thereafter he convinced her to begin working

19   as a prostitute.  *Id*. at 52-69.  Mendoza began having prostitution dates in August 2014.  *Id*.  She

20   testified that Guizar-Cuellar pressured her to make money, that he beat her, and that she did not

21   call the police for fear that Guizar-Cuellar would hurt her.  *Id*. at 82-85.  Guizar-Cuellar brought

22   other women and girls in to work with Mendoza, including B.M., J.B., and J.V.  *Id*. at 97-108.

23   Mendoza described Guizar-Cuellar's behavior as erratic and violent during the alleged conspiracy

24   period, and she described a life of fear, shame, and uncertainty as to when she would be hit next.

25   *Id*. at 108-09.

26   Guizar-Cuellar moved the prostitution operation to Southern California in February 2016,

27   where he and Mendoza were arrested and charged in Orange County Superior Court with human

28   trafficking.  Tr. Vol. 6 at 29-31, Def.'s Exh. C, ECF 563-5.  After spending fourteen months in

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1    jail, Mendoza agreed to cooperate and testify against Guizar-Cuellar, and she participated in a

2    lengthy videotaped proffer session with state and federal law enforcement.  *Id*.  Pursuant to a plea

3    agreement, Mendoza pled guilty to a felony count of pandering.  Trial Exh. 23, Def.'s Exh. K,

4    ECF 563-13.

5    　　　　Mendoza presented the testimony of Charles Flinton, Ph.D., an expert in the evaluation and

6    treatment of sex offenders and the dynamics of female sex trafficking, and of John Vaneck, an

7    expert in the field of human sex trafficking.  Tr. Vol. 6 at 36-45, 96-112.  Dr. Flinton diagnosed

8    Mendoza with post-traumatic stress disorder and amphetamine abuse disorder, testified regarding

9    the vulnerability of female sex trafficking victims and their propensity to fall in love with their

10   abusers, and their distrust of law enforcement.  *Id*. at 49-68.  Mr. Vanek testified that prostitute

11   victim-offenders typically are controlled by physical abuse, emotional abuse, food deprivation,

12   torture, and threats.  *Id*. at 121-28.  Mr. Vanek also testified that fear of law enforcement typically

13   is instilled by pimps to deter prostitute victim-offenders from cooperating with the police.  *Id*.

14   　　　　Mendoza's other witnesses included her son, A.R., and A.R.'s grandmother, Gloria

15   Eniquez.

16   　　　　*Jury Verdict*

17   　　　　After eight days of deliberation, the jury returned unanimous guilty verdicts against

18   Mendoza on Count 1 (conspiracy) and Count 2 (sex trafficking of B.M.).  *See* Jury Verdict, ECF

19   545.  The jury hung on Count 3 (sex trafficking of J.B.) and acquitted on Count 4 (sex trafficking

20   of J.V.).  *See id.*  The Government dismissed Count 3, electing to proceed to sentencing on the two

21   unanimous convictions.  *See* Order Approving Notice of Dismissal, ECF 547.  A sentencing

22   hearing for Mendoza and her three co-defendants is set for May 10, 2022.  *See* Order Granting

23   Motion to Continue Sentencing Hearing, ECA 584.

24   　　　　Mendoza seeks a new trial under Rule 33.

25   **II.    LEGAL STANDARD**

26   　　　　"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if

27   the interest of justice so requires."  Fed. R. Crim. P. 33(a).  "[A] district court's power to grant a

28   motion for a new trial is much broader than its power to grant a motion for judgment of acquittal."

1   *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000) (internal quotation marks and

2   citation omitted).  "The court is not obliged to view the evidence in the light most favorable to the

3   verdict, and it is free to weigh the evidence and evaluate for itself the credibility of the witnesses."

4   *Id*.  "A motion for a new trial under Rule 33 may be granted for failure to give proper jury

5   instructions" if the instructional error affects substantial rights.  *United States v. Chang*, No. 16-

6   CR-00047-EJD-1, 2020 WL 5702131, at \*15 (N.D. Cal. Sept. 24, 2020).  Similarly, a new trial

7   may be warranted on the basis of an incorrect evidentiary ruling, but only if the ruling

8   substantially prejudiced a party.  *See United States v. 99.66 Acres of Land*, 970 F.2d 651, 658 (9th

9   Cir. 1992).

10   **III.   DISCUSSION**

11     Mendoza seeks a new trial based on three asserted errors:  (1) the Court's refusal to give

12   her proposed jury instruction on the defense of duress; (2) the exclusion of jail letters exchanged

13   between Guizar-Cuellar and Mendoza after the end of the charged conspiracy period; and (3) the

14   Court's refusal of Mendoza's request to play all four hours of her videotaped proffer session.  The

15   Court addresses these asserted errors in turn.

16     **A. Jury Instruction on Duress Defense**

17     Mendoza contends that the Court erred in failing to adopt her proposed jury instruction on

18   the defense of duress.  Mendoza submitted alternative proposed versions of the instruction –

19   "Modified Ver. 1" and "Modified Ver. 2" – both of which were based on the Ninth Circuit's

20   Model Instruction 6.5.[1]  *See* Def.'s Prop. Instructions at 2-3, ECF 383.[2]  Model Instruction 6.5

21   reflects the three elements of the duress defense under long-established Ninth Circuit law.  "To

22   establish duress, the burden of proof is on the defendant to show that: (1) he was under an

23

---

24   [1] The Ninth Circuit's Manual of Model Criminal Jury Instructions was revised in December 2021,
25   after Mendoza's trial, and the model instruction on the defense of duress has been renumbered
     from 6.5 to 5.7.  There has been no change to the substance of the instruction, and thus the 2021
26   revision does not call into question the correctness of the Court's instruction on the defense of
     duress, which is based on the model instruction.  For the sake of simplicity, this order continues to
27   refer to the relevant model instruction as Model Instruction 6.5.

28   [2] Mendoza's alternative proposed versions of Model Instruction 6.5 are filed as an attachment to
     this order.

United States District Court
Northern District of California

1   immediate threat of death or serious bodily injury, (2) he had a well grounded fear that the threat

2   would be carried out, and (3) he had no reasonable opportunity to escape." *United States v. Chi*

3   *Tong Kuok*, 671 F.3d 931, 947 (9th Cir. 2012).  These elements of the duress defense have been

4   the law of the Ninth Circuit for more than thirty-five years.  *See United States v. Contento-*

5   *Pachon*, 723 F.2d 691, 693 (9th Cir. 1984) ("There are three elements of the duress defense: (1) an

6   immediate threat of death or serious bodily injury, (2) a well-grounded fear that the threat will be

7   carried out, and (3) no reasonable opportunity to escape the threatened harm.").  The Ninth Circuit

8   recently reaffirmed these elements of the duress defense in 2019.  *See United States v. Lopez*, 913

9   F.3d 807, 813 (9th Cir. 2019).

10           Ninth Circuit law is equally clear and well-established that "[t]o establish the element of

11   immediacy, a defendant must make a prima facie showing that the defendant completed the illegal

12   action under a threat of immediate harm to the defendant or the defendant's family." *United*

13   *States v. Vasquez-Landaver*, 527 F.3d 798, 802 (9th Cir. 2008).  Fear alone is not sufficient. *See*

14   *id.* at 804.  The defendant must establish that "he faced specific threats of immediate harm during

15   the entire period in which he engaged in illegal activity." *Id*. at 803-04.

16           In her "Modified Ver. 1" of the duress defense instruction, Mendoza proposed an

17   expansion of the threat element beyond the threat of "death or serious bodily injury" to include the

18   threat of nonphysical harm, including "psychological, financial, or reputational harm."  Def.'s

19   Prop. Instructions at 2.  In her alternative "Modified Ver. 2" of the instruction, Mendoza left the

20   threat element as in the original model instruction but proposed addition of language instructing

21   the jury to evaluate the elements of the duress defense from the perspective of a reasonable person

22   with the same background, and in the same circumstances, as Mendoza. *See id.* at 3.

23           The Court declined to adopt the expansion of the threat element proposed in Mendoza's

24   "Modified Ver. 1."  However, the Court adopted in part the modification proposed in Mendoza's

25   "Modified Ver. 2," including language similar to that proposed by Mendoza that instructed the

26   jury to consider the elements of the duress defense from the perspective of a reasonable person of

27   the same background and in the same circumstances as Mendoza.  The Court's modification to

28   Model Instruction 6.5 was based on *Lopez*, in which the Ninth Circuit held that evidence on

United States District Court
Northern District of California

7

United States District Court
Northern District of California

1    battered women's syndrome may be relevant to the second and third elements of the duress

2    defense, whether the defendant's fear that the threat will be carried out is well-grounded, and

3    whether the defendant had a reasonable opportunity to escape.  *See Lopez*, 913 F.3d at 822-23.

4    The Court thus instructed the jury in relevant part as follows:

5          A defendant acts under coercion or duress only if at the time of the crime charged:

6          1.      there was a present, immediate, or impending threat of death or
     serious bodily injury to the defendant or a family member of the defendant if the
7          defendant did not participate in the commission of the crime;

8          2.      the defendant had a well-grounded fear that the threat of death or
     serious bodily injury would be carried out; and
9

10         3.      the defendant had no reasonable opportunity to escape the
     threatened harm.

11         In determining whether the defendant had a well-grounded fear that the
     threat of death or serious bodily injury would be carried out, and whether she had
12         no reasonable opportunity to escape, you may consider all the surrounding
     circumstances and what a reasonable person of the same background and in the
13         same circumstances would have done.

14   Jury Instructions, Instruction 36B, ECF 537.

15         Mendoza contends that the Court's failure to adopt her "Modified Ver. 1" was erroneous

16   and prejudicial to her.  "A defendant is entitled to an instruction concerning his theory of the case

17   if it is supported by law and has some foundation in the evidence."  *United States v. Echeverry*,

18   759 F.2d 1451, 1455 (9th Cir. 1985).  "So long as the instructions fairly and adequately cover the

19   issues presented, the judge's formulation of those instructions or choice of language is a matter of

20   discretion."  *Id*.  The instruction given by the Court tracks the longstanding Ninth Circuit law on

21   the defense of duress, as well as the Ninth Circuit's model jury instruction.

22         Mendoza nonetheless argues that the instruction given by the Court violated her Due

23   Process and Equal Protection rights.  Mendoza grounds her argument in the definitions of

24   "coercion" and "serious harm" set forth in the Trafficking Victims Protection Act ("TVPA"), 18

25   U.S.C. § 1591 et seq.  The statute defines the criminal act of sex trafficking a child to include

26   coercing the child by threats of "serious harm," and it defines "serious harm" to mean "any harm,

27   whether physical or nonphysical, including psychological, financial, or reputational harm . . . ."

28   18 U.S.C. §§ 1591(a), (e)(2), (e)(5).  Mendoza argues that because the Government may charge a

8

1    § 1591 offense based on coercion of a child by threats of nonphysical harm, a criminal defendant

2    charged with a violation of § 1591 should be allowed to mount a duress defense based on threats

3    of nonphysical harm.

4          Mendoza's argument has no basis in law or logic.  There is no suggestion in the legislative

5    history that Congress intended the TVPA not only to extend protection to children victimized by

6    sex traffickers, but also to exonerate individuals charged with sex trafficking children.  Mendoza's

7    contention that her federal constitutional rights are implicated by the difference between the

8    conduct that may be charged as sex trafficking on the one hand, and the elements of a duress

9    defense asserted by a defendant seeking to escape the consequences of sex trafficking on the other,

10   is nonsensical.

11         Having made this determination, the Court need not and does not address the

12   Government's argument that any error flowing from the failure to adopt Mendoza's proposed

13   instruction was harmless.

14         **B.      Exclusion of Jail Letters**

15         Mendoza next argues that the Court erred in excluding handwritten letters that Guizar-

16   Cuellar wrote to her while a detainee in Orange County after the end of the charged conspiracy

17   period.  Mendoza sought to introduce those letters to show that Guizar-Cuellar exerted

18   psychological coercive control over her by means of false promises of love, plans for their future,

19   and veiled threats that Mendoza needed to recant her post-arrest statements to law enforcement

20   about Guizar-Cuellar.  The Government moved in limine to exclude the letters as irrelevant,

21   inadmissible, and unduly prejudicial under Federal Rules of Evidence 401, 403, and 801.  *See*

22   Gov't's MIL 8, ECF 519.  The Court granted the Government's motion on the record, finding that

23   based on the Court's determination regarding the scope of the duress defense, the letters were not

24   relevant to the duress defense and could not be considered by the jury with respect to the duress

25   defense.

26         The Court concludes that its exclusion of the letters was not in error because it was

27   consistent with the applicable law on the duress defense and Jury Instruction 36B, discussed

28   above.  Moreover, "[a] new trial is only warranted on the basis of an incorrect evidentiary ruling if

United States District Court
Northern District of California

1    the ruling substantially prejudiced a party." *99.66 Acres of Land*, 970 F.2d at 658.  Mendoza has

2    not demonstrated that she was substantially prejudiced by exclusion of the letters.  She argues that

3    the letters would have helped explain to the jury why she waited more than a year after her arrest

4    in Orange County to turn on Guizar-Cuellar and begin cooperating with law enforcement.  Given

5    that the Orange County arrest and subsequent proceedings occurred after the end of the charged

6    conspiracy period, the Court finds that Mendoza's inability to present the letters did not

7    substantially prejudice her.

8           **C.      Proffer Session**

9           Finally, Mendoza argues that the Court erred in refusing her request to play the entirety of

10   the four-hour videotape of her proffer session following her arrest in Orange County.  The

11   Government used specific clips of the proffer session in its cross-examination of Mendoza,

12   primarily by asking her questions regarding her involvement in sex trafficking the minor victims

13   and then playing clips of her prior statements during the proffer session that contracted her live

14   testimony.  Mendoza objected to the playing of specific clips of her proffer session and requested

15   that the entire four-hour video be played under the rule of completeness, *see* Fed. R. Evid. 106,

16   and to admit prior consistent statements to rehabilitate her, *see* Fed. R. Evid. 801(d)(1)(B).  The

17   Court indicated that playing the entire four-hour proffer video would be an undue consumption of

18   time under Federal Rule of Evidence 403.

19          The Court invited Mendoza to identify specific portions of the four-hour video that either

20   provided proper context for the portions played by the Government or contained identified prior

21   consistent statements.  Mendoza offered a seven-minute clip and the Court allowed a portion of

22   that clip to be played for the jury.  Mendoza argues that the entirety of the four-hour video was

23   necessary to rebut what she termed the Government's "global[] attack" on her direct examination

24   trial testimony.  Def.'s Mot. at 24, ECF 563.

25          Rule 106, which codifies the common law doctrine of the rule of completeness, provides

26   that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may

27   require the introduction, at that time, of any other part – or any other writing or recorded statement

28   – that in fairness ought to be considered at the same time."  Fed. R. Evid. 106.  The rule of

United States District Court
Northern District of California

1    completeness requires that a full recorded statement be introduced when one party's use of a

2    portion of the recorded statement would cause a misunderstanding or distortion that may be

3    averted only by presentation of another portion of the recorded statement. *See United States v.*

4    *Collicott*, 92 F.3d 973, 983 (9th Cir. 1996). Mendoza has not identified a misunderstanding or

5    distortion caused by the Government's use of clips of the proffer video, let alone a

6    misunderstanding or distortion that could have been cured only by playing the entire four-hour

7    proffer video.

8          Under Rule 801(d)(1)(B), a statement is not hearsay if "[t]he declarant testifies and is

9    subject to cross-examination about a prior statement, and the statement . . . is consistent with the

10    declarant's testimony and is offered: (i) to rebut an express or implied charge that the declarant

11    recently fabricated it or acted from a recent improper influence or motive in so testifying; or

12    (ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground." Fed.

13    R. Evid. 801(d)(1)(B). Mendoza has not explained why playing the entirety of the four-hour

14    proffer video was necessary to rehabilitate her credibility following cross-examination by the

15    Government.

16          Accordingly, the Court concludes that its denial of Mendoza's request to play the entire

17    four-hour proffer video was not in error. Moreover, Mendoza has not demonstrated that she was

18    substantially prejudiced by the denial of her request. *See 99.66 Acres of Land*, 970 F.2d at 658

19    (incorrect evidentiary ruling warrants a new trial only where it substantially prejudiced a party).

20         **D.**      **Conclusion**

21          The Court finds that Mendoza has failed to demonstrate instructional or evidentiary errors

22    that would warrant a new trial. Consequently, her motion for new trial is DENIED.

23    **IV.**    **ORDER**

24         (1)      Mendoza's motion for new trial is DENIED.

25         (2)      This order terminates ECF 563.

26

27    Dated: March 30, 2022

28

                                       BETH LABSON FREEMAN
                                       United States District Judge

United States District Court
Northern District of California