Wm. Michael Whelan, Jr., Esq. (CA Bar No. 112190)
46 West Santa Clara Street
San Jose, California 95113
(650) 319-5554 telephone
(415)-874-7082 facsimile
whelanlaw@gmail.com

Attorney for Defendant
ARACELI MENDOZA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>　　　　Plaintiff,<br><br>vs.<br><br>ARACELI MENDOZA,<br><br>　　　　Defendant. | Case Number: CR-19-CR-275-BLF<br><br>**DEFENDANT ARACELI MENDOZA'S SENTENCING MEMORANDUM**<br><br>Date: September 27, 2022<br>Time: 9:00 a.m. |

COMES NOW defendant Araceli Mendoza, by and through her lawyer Wm. Michael Whelan, Jr., and offers this sentencing memorandum requesting that this Court follow the government and U.S. Probation Department's recommendation of the mandatory minimum of 10 years in federal prison. Such a sentence, although far greater than necessary for public safety, punishment, and accountability, is mandatory and certainly sufficient to achieve the goals of federal sentencing.

Ms. Mendoza also respectfully requests that the Court recommend to B.O.P. that she be specially designated to Dublin F.C.I. which will make it possible for her two young boys regularly visit her. Here second and third choices would be San Diego MCC and Los

-1-

Angeles MDC respectively. In addition, if the Court denies her motion to stay judgment and request for release pending appeal, Ms. Mendoza requests, and the government and U.S. Probation do not oppose, that she be allowed to voluntarily surrender. Ms. Mendoza's security classification will be lower if the Court permits her to voluntarily surrender.

Ms. Mendoza offers three support letters, attached as Exhibit A, for the Court's consideration.

## Unresolved Responses/Objections in the PSR

Ms. Mendoza objects to the two-level upward **Adjustment for Obstruction of Justice** at ¶76 alleging that Ms. Mendoza committed perjury on the stand because she gave inconsistent testimony with her Orange County proffer session statements. The trial testimony of JV, JB, and Ms. Contreras revealed multiple inconsistencies and prior inconsistent statements, yet the PSR does not allege that any of them committed perjury. We do not know what testimony the jury believed and did not believe; we do know that they convicted Ms. Mendoza on two counts only, acquitting her of trafficking JV, and hopelessly hung on whether or not Ms. Mendoza trafficked JB. Two charged women defendants testified, Ms. Contreras and Ms. Mendoza. Both were victimized severely by Mr. Cuellar; both had inconsistent memories and testimony; if one of them (Ms. Mendoza) committed perjury, so did Ms. Contreras.

Ms. Mendoza also objects to the PSR's failure, at ¶83 (and explained at page 29 or 41 ¶4) to apply a two-level downward adjustment for **Acceptance of Responsibility.** Ms. Mendoza specifically and compellingly agreed to cooperate with both Orange County

and federal prosecutors to testify in both proceedings against her co-defendants, and she fully took responsibility for her conduct in Southern and Northern California during her proffer session there. In asserting her coercion defense, she did not deny taking responsibility, she asserted a legal excuse, coercion. In *United States v. Johnson*, 956 F.2d 894 (9th Cir. 1992), the Court acknowledged "the rule that a defendant may not be penalized for exercising a constitutional right." *Id.* at 904. In *United States v. Sitton*, 968 F.2d 947 (9th Cir. 1992), the Court stated that a sentencing court "may not consider against the defendant any constitutionally protected conduct," stated that the court "may not deny the reduction because of that choice," and remanded for reconsideration because it appeared the district court might have violated these principles. *Id.* at 962. In *United States v. McKinney*, 15 F.3d 849 (9th Cir. 1994), the court stated: "Were a defendant *required* to plead guilty to be entitled to the reduction, the sentencing guidelines would penalize the exercise of a constitutional right." *Id.* at 852 (emphasis in original). Also, the 9th Circuit noted in *United States v. Cortes*, 299 F.3d 1030 (9th Cir. 2002) the the district court appeared to have believed that a defendant who went to trial was ineligible for the acceptance of responsibility reduction as a matter of law. The Court held that "employing such a per se bar to the acceptance of responsibility reduction would have impermissibly penalized Cortes for exercising his constitutional rights." *Id.* at 1039. *See also United States v. Dhingra*, 371 F.3d 557, 568 (9th Cir. 2004) ("It is well settled that a defendant who exercises his constitutional right to trial does not automatically forfeit the benefit of the adjustment for acceptance of responsibility.").

ARACELI MENDOZA'S SENTENCING MEMORANDUM

The Ninth Circuit has also applied this principle to defendants who testify at trial in in support of an affirmative defense. *United States v. Ing*, 70 F.3d 553 (9th Cir. 1995) held that the district court erred in denying credit for acceptance of responsibility because the PSR claimed that the defendant denied criminal intent. *Id.* at 556. The Ninth Circuit held that this was error, because "the defense of entrapment by its very nature entails an admission regarding the defendant's participation in criminal activity." *Id.* The court has similarly indicated that there may be acceptance of responsibility when the affirmative defense of duress is raised in a defendant's testimony, *see United States v. Gamboa-Cardenas*, 508 F.3d 491, 505-06 (9th Cir. 2007).

Lastly, although somewhat moot given Probation and the government's recommendation for a sentence nothing greater than the mandatory minimum, Ms. Mendoza objects to the inclusion in the PSR of acquitted and dismissed conduct of JV and JV. In *Jones v. United States*, 574 U.S. 948 (2014), Justice Scalia, joined by Justice Ginsburg and Justice Thomas, observed in his dissent that the Sixth Amendment, together with the Fifth Amendment's Due Process Clause, requires that each element of a crime be either admitted by the defendant, or proved to the jury beyond a reasonable doubt. Any fact that increases the penalty to which a defendant is exposed constitutes an element of a crime and must be found by a jury, not a judge.

### 3553(a) Factors

Although the PSR acknowledges numerous mitigating factors for the Court to consider at sentencing, Ms. Mendoza would like to remind the Court of the following:

**Childhood and Young Adult Abuse History:** Ms. Mendoza's extensive and

sever emotional, physical, and sexual abuse during childhood, and during the conspiracy at the hands of Cuellar, were well documented before and at trial. As testified to by defense expert Dr. Charles Flinton, Ms. Mendoza's history resulted in impaired mental and emotional capacities, especially decision-making and vulnerability to coercion. See *United States v. Ferguson,* 942 F. Supp.2d 1186, 1194 (diminished capacity from PTSD and other disorders can be a 3553(a) mitigating factor); *United States v. Rivera,* 192 F.3d 81, 84 (2nd Cir. 1999); *United States v. Walter,* 256 F.3d 891 (9th Cir. 2001) [discussing diminished capacity under USSG §5K2.13].

**Coercion:** Ms. Mendoza committed the offenses due to serious physical violence, threats of violence, and multiple non-physical forms of manipulation and coercion by lead defendant Cuellar. Although the jury did not unanimously agree that these amounted to a complete defense, Ms. Mendoza qualifies pursuant to USSG §5K2.12 for a downward departure.

**Cooperation:** Ms. Mendoza fully and completely cooperated with Orange County state prosecutors and the federal prosecutors in an extensive proffer session in 2017. She fully and completely disclosed her role and the roles of others in the offenses in Southern and Northern California. She agreed to testify if asked to in either proceeding. Shortly thereafter, knowing that Ms. Mendoza had agreed to testify against him, Cuellar settled his Orange County case for a 32-year sentence in state prison. Because of her compelling cooperation, the OC prosecutor named her as a victim of Cuellar and gave Ms. Mendoza a non-strike, non-sex registerable plea offer in exchange for credit for time served and probation. The NDCA U.S. Attorney's Office has never recognized Ms. Mendoza's

dramatic role in agreeing to cooperate and causing Cuellar to plead guilty and accept a sever state prison sentence. See *United States v. Robinson,* 741 F.3d 588, 599 (5th Cir. 2014); *United States v. Truman,* 304 F.3d 586 (6th Cir. 2002); USSG 5K2.0; Also see *United States v. Dowdell,* 396 F.App'x 16 (4th Cir. 2009).

**Post-offense and Post-conviction Rehabilitation:** Since Ms. Mendoza's release from custody in Orange County then NDCA in the Summer of 2017, she has been on an ankle monitor with perfect compliance; she has been gainfully employed and drug free, and she has regained custody of her two sons whom she cares for exclusively. Ms. Mendoza has demonstrated complete rehabilitation over the last 5 years. See *Pepper v. United States,* 562 U.S. 476 (2011); *United States v. Martin,* 520 F.3d 87 (1st Cir. 2008).

**Youth and Immaturity:** Ms. Mendoza had recently turned 22 years old when she was recruited, enticed by, and brutally victimized by Mr. Cuellar. See *Roper v. Simmons* (2005) 543 U.S. 551, 568-575; *Gall v. United States,* 552 U.S. 38, 48-50, 58 (2007); *Graham v. Florida* (2010) 560 U.S. 825;  *J.D.B. v. North Carolina* (2011) 564 U.S. 261, 131 S.Ct. 2394, 2403; and *Miller v. Alabama* (2012) 567 U.S. 460, 465, 132 S.Ct. 2455, 2460.

The trial evidence of Ms. Mendoza's immaturity and susceptibility to manipulation and coercion (*especially non-physical forms of coercion that the Court refused to allow the jury to consider)* was overwhelming.

**USSG §5G1.3 note 5:** Ms. Mendoza's Orange County conviction and offense conduct constitutes subsequent relevant conduct to the previous-in-time captioned federal case offense conduct. She served 430 actual days imprisonment in county jail there and an

additional 18 days in federal custody before her pretrial release. USSG §5G1.3 note 5 allows for a downward adjustment if that completed OC term of imprisonment had been undischarged at the time of sentencing (had it occurred earlier). Consequently, Ms. Mendoza respectfully requests that the Court recommend that BOP award 448 days credit for time served to Ms. Mendoza.

### Conclusion

Ms. Mendoza requests that the Court impose the minimum possible under federal law, and that the Court recommend to BOP designation to FCI Dublin and award 448 days credit for time served. And if the Court declines Ms. Mendoza' request to stay judgment and release her on appeal, she respectfully requests that the Court allow her to voluntarily surrender.

Respectfully submitted,

Dated: September 18, 2022            _____/s/_____
                                     WM. MICHAEL WHELAN, JR.
                                     Attorney for Defendant Araceli Mendoza

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

**EXHIBIT A**

**TO**

**DEFENDANT ARACELI MENDOZA'S SENTENCING MEMORANDUM**

22
23
24
25
26
27
28

ARACELI MENDOZA'S SENTENCING MEMORANDUM

WM. MICHAEL WHELAN, JR.
ATTORNEY AT LAW
46 SEST SANTA CLARA STREET
SAN JOSE, CALIFORNIA 95113
(650) 319-5554

To Whom it May Concern,

Over the past few months, I had the pleasure of working with Araceli Mendoza at Veritas Accounting. Araceli was a payroll specialist on my team.

While on my team, I got to know Araceli on a professional and personal level. She was reliable, hard-working and a great asset to our team. She always had a positive attitude and was willing to help the team in whatever way she could.

It is my understanding that Araceli's character is in question. I can say with confidence that I never once questioned her character or trustworthiness while she worked with me. She always handled sensitive information carefully and showed integrity in all that she did.

Personally, I believe Araceli has a huge heart. She always talked of the love she has for her two boys and her husband, and I could tell she would do anything for them. Araceli shared some of her tragic past with me and It's hard for me to fathom how someone could be subjected to so many horrible things and still have such a loving heart; but she is a great example of what grace can do for a person. I know her faith has lifted her out of some dark places, and I pray that she gets a second chance to live a life that her and her family can be proud of. I accompanied Araceli to church recently and have heard her testimony about how much she has changed her life around in the past few years. She truly is inspiring. Araceli has touched my heart and I hope she gets the chance to share her faith and inspire many more.

Thank you for your time.

*Vanessa Rodriguez*
Vanessa Rodriguez

To whom it may concern,

My name is Kristen Johnson and I'm writing this letter is in regards to Araceli. We met back in 2017, when we are both incarcerated. I had been in and out of jail for various drug charges I now have five years clean and sober. I am a mother to two almost 3 boys. The life I live today is completely different from the life that I lived back then. I know what it takes to change your life, the hard work you must put in if you want to gain relationships back and trust from other children or relatives. I owe my sobriety to my probation officer at the time who saw something different in me. I stopped using my great ideas and follow direction and now today I have a life that's free of addiction jail or anything that comes along with those two things I've watched Araceli grow so much these past five years. The girl that I met in jail was scared, remorseful and carried guilt for what she was made to do by her codefendant. A girl who was so afraid of what was to come, not knowing if she'd ever see her boys again. The girl that I know today, five years later, used that remorse and guilt and changed her life. She has done everything the courts have asked. This woman has strived to meet every expectation placed before her. Today she is mother and a wife, a daughter that her family is proud of. Araceli deserves to be free, to be the mother that she was meant to be. Today Araceli is a productive member of society. She loves Jesus and strives everyday to be a better person. What Araceli has done during the past 5 years to prove to the courts, her family and herself wasn't easy. Lets face it, she was also victim. She was being used and abused, lied to and manipulated. I'm writing this letter in hopes that you will find it it in her favor to be free and continue Being a example to other women. Most of all To continue being a mother to her two boys.

Thank you for taking the time to read this letter,

Kristen Johnson

09/02/2022

Arianna Miller

05 November 2021

Hello, My name is Arianna Ivette Miller and I am the step daughter of Araceli Mendoza. I am 17 years old from San Jose, California. I'm currently attending as a senior at Mount Pleasant High School which I've attended since my sophomore year of high school. I previously attended San Jose High School during my freshman year as well. I'm also currently employed at Michaels, the arts and crafts store, which is also my 3rd job. I previously was working at Rite Aid and Michaels Tully location. Right now, I'm looking into attending Foothill Community College to study sociology and Dental Hygienist classes. I've known Araceli since I was a little girl and grew very close to her actually. She was a sweet young girl and an amazing mother. She always made sure her sons were well kept and loved, even up to now. When she returned back in my life, I noticed how much she reconnected with God and how mature she's gotten. I was really proud of my father for reconnecting with her as well and bringing her back in my life. All Araceli has shown me was unconditional love, care, someone to truly lean on, and connect with. She brought the boys back into my life and now I treat them as if we were blood related. I couldn't be more grateful for them and I'm so proud of their growth. One thing I always admired about Araceli was her strength, she never gave up especially for her 2 loving boys, who she raised to be the sweetest and most kind hearted young men. My father is incarcerated right now, so when she came back into my life times were definitely rough, but she turned everything around. I'm so grateful to have such an amazing, smart, kind hearted, courageous, and persistent woman in my life. She's helped me mature in so many ways as well as get a closer relationship

with my father. Araceli always made me feel loved and never alone. For the past 3 years, I wasn't mentally happy with many things, but she taught me a lot about self love, being proud of myself for how far i've come, and to never give up. She is definitely one of the strongest women that I've ever met and I'm so glad she's actually in my life for good. Not once in my life have I ever had any doubts about this woman because she always made it a priority to keep her word. I spent my 17th birthday with her and my mother and during that time I began to realize a lot. The simple fact that she put her pride to the side for me and my father to create a great friendship with my mother and made sure I had an amazing birthday with them both by my side. I noticed in little situations like that of how big her heart is with me , let alone anyone she encounters. Araceli always made sure to shield me from things just how my father would, carried out promises just how my father would, and loved me more than words could ever explain just how my father would. This woman is the reason why I continue to push forward and never give up. She's taught me that no matter how many times life pushes you down to always get back up and put your faith into God. I'm so grateful for you Araceli Miller and I'm so glad we get to share the same last name now. I'm so grateful for all that you've done for me and all the love you make sure I feel consistently. You've taught me so much and help me day by day to continue to blossom into this respectful young lady. You're an amazing mother and I know biologically you're not my real mother, but you've always allowed me to feel your real motherly love and for that, I'm forever grateful. Thank you for being the strong backbone for me and my father. We love you, we're so appreciative of everything, and how far you've come as a woman of God. Thank you for taking the time to read this.

Arianna Ivette Miller